IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| TAMMI LOCKHART CIMIOTTA § <br> Plaintiff § <br> § <br> v. § <br> § <br> CITY OF QUINTANA, TEXAS, § <br> FREEPORT LNG DEVELOPMENT, § <br> L.P.,, VENANZIO "MIKE" § <br> CASSATA, in his official and § <br> individual capacities, JUDITH § <br> CAMILLE TYNER, in her official and § <br> individual capacities, SUE ANN § <br> TULEY, in his official and individual § <br> capacities, STEVE ALONGIS, in his § <br> official and individual capacities, and § <br> REBECCA BUTTON, in his official § <br> and individual capacities, and SHARI § <br> LYNN WRIGHT in her individual § <br> capacities. <br> *Defendants* | CIVIL ACTION NO. 3:25-cv-00220 |

**AMENDED PLAINTIFF'S ORIGINAL COMPLAINT**

## I. INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983 to redress retaliation against Plaintiff, the former City Administrator of Quintana, Texas, after she spoke publicly about the City Council's failure to renegotiate—or lawfully tax—massive real estate holdings of Defendant Freeport LNG Development, L.P. ("Freeport LNG"). Her protected speech threatened the lucrative "payment in lieu of taxes" (PILOT) scheme that benefits council members who (a) reside outside the city, (b) list company-owned property as their nominal domicile, or (c) draw substantial income from

Freeport LNG. Within weeks, the newly elected Mayor and conflicted Council voted to remove her, without notice or a due process hearing, and in violation of Texas's Open Meetings Act.

2. Plaintiff seeks (i) preliminary and permanent injunctive relief reinstating her, (ii) declaratory relief that the termination was unconstitutional and void, (iii) compensatory and punitive damages against the individual actors, and (iv) attorney's fees and costs under 42 U.S.C. § 1988.

## II. JURISDICTION & VENUE

3. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because the action arises under the Constitution and laws of the United States, specifically the First and Fourteenth Amendments and 42 U.S.C. § 1983.

4. Supplemental jurisdiction over related Texas law claims (Tex. Gov't Code ch. 554, Texas Whistleblower Act) exists under 28 U.S.C. § 1367(a).

5. Venue lies in this Division under 28 U.S.C. § 1391(b) because all Defendants claim residence in, and the events complained of occurred in, Brazoria County, which is assigned to the Galveston Division of the Southern District of Texas.

## III. PARTIES

6. Plaintiff Tammi Lockhart Cimiotta is a natural person, former City Administrator of Quintana, and a resident of Brazoria County, Texas.

7. Defendant City of Quintana is a Type-A general-law municipality incorporated under Texas law. It may be served through its Mayor, Venanzio "Mike" Cassata, 703 Burnett Street, Quintana, TX 77541.

8. Defendant Venanzio "Mike" Cassata is the putative Mayor of Quintana. Plaintiff sues him in his individual capacity for damages and in his official capacity for prospective injunctive relief. On information and belief, he maintains his true domicile in Montgomery County and lists a Freeport LNG-owned house as his Quintana "residence." Exhibit 13. He may be served at 703 Burnett Street, Quintana, TX 77541, 28722 Champions Drive, Magnolia, Texas or wherever he may be found.

9. Judith Camille Tyner is a putative member of the Quintana City Council. Plaintiff sues her in her individual capacity for damages and in her official capacity for prospective injunctive relief. She may be served at 818 Ft Velasco Drive in Surfside, Texas, at 914 Gulf Street, Qunitana, Texas or wherever she may be found.

10. Steven Grant Alongis is a putative member of the current Quintana City Council and the former Mayor. Plaintiff sues him in his individual capacity for damages and in his official capacity for prospective injunctive relief. He may be served at 807 Burnett, Quintana Beach, or wherever he may be found.

11. Sue Ann Tuley is a putative member of the Quintana City Council. Plaintiff sues her in her individual capacity for damages and in her official capacity for prospective injunctive relief. She may be served at 914 Gulf Street, Quintana, Texas, at 502B Sundial Street, Surfside, Texas, or wherever she may be found.

12. Rebecca Lynn Button is a putative member of the Quintana City Council. Plaintiff sues her in her individual capacity for damages and in her official capacity for prospective

injunctive relief. She may be served at 2535 Compass Court, Freeport, Texas, a residence owned by a subsidiary of Freeport LNG Development, L.P. (Exhibits 7, 8) or wherever she may be found.

13. Defendant Freeport LNG Development, L.P. ("Freeport LNG") is a Delaware limited partnership registered to do business in Texas. Acting in concert with City officials, it became a state actor for § 1983 purposes by jointly orchestrating Plaintiff's termination. It may be served through its registered agent, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

14. Shari Lynn Wright is the former mayor of Quintana, Texas. She may be served at 2603 FM 1495, Quintana, Texas or wherever she may be found.

## IV. FACTUAL ALLEGATIONS

A. **Freeport LNG's property-tax avoidance scheme**

15. Freeport LNG maintains separate industrial district contracts in the immediate area. The agreement with Quintana, Texas was formed May 5, 2004, and covers the land on Quintana Island where the liquefaction facility sits. Freeport LNG's agreement with Freeport, Texas compensates the mainland city for impacts related to LNG infrastructure and port use.

16. The 2004 Industrial District Contract utilizes an automatic escalator based upon a stated percentage schedule or the CPI-U of the Houston, Galveston, Brazoria region for prior calendar year. Roughly, every decade the parties may give notice of a desire to renegotiate the rate for the next term. If the parties do nothing, the previously agreed formula rolls over. If the parties execute no new contract, Quintana may annex the tract and begin levying ad-valorum taxes, releasing Freeport LNG from its PILOT liabilities.

5 | P a g e

**Appraisal Discrepancy and Undervaluation**

17. Despite Freeport LNG's substantial capital investment and expansion over the last decade, the certified appraised value of its facilities remains significantly understated for ad valorem tax purposes. In 2010, the estimated value of Freeport LNG's original regasification terminal was approximately $800 million to $850 million (see *Freeport LNG Development Summary, 2010 Valuation Estimates*). Since that time, Freeport LNG has expanded its footprint and infrastructure by an additional $12.6 billion in capital improvements, including the construction of Liquefaction Trains 1 through 3 and associated port and utility infrastructure (see *Train 4 Chapter 313 Application*; *Port Freeport Agenda Memoranda, 2020–2024*). Yet, according to the 2020 certified tax appraisal, the reported value of Freeport LNG's land, improvements, and tangible personal property was only $6.86 billion (see *Brazoria County Appraisal District, 2020 Certified Appraisal Summary for Freeport LNG Development, L.P.*). This represents a material reduction in assessed value relative to total investment and operational scale. The discrepancy may be attributable to a combination of industrial district PILOT agreements that displace standard taxation, exemptions or abatements under Chapter 313 of the Texas Tax Code, and accounting methodologies that artificially suppress appraisals through depreciation or limited reporting. The result is a significant suppression of Quintana's potential tax base, further justifying heightened scrutiny of the current industrial district agreement and any attempts to avoid renegotiation or annexation consequences through undue influence or ultra vires conduct.

18. The Train 4 Chapter 313 application and Port Freeport agenda estimate an additional $ 2.403B in new investment in the form of tangible personal property will begin entering the tax rolls in 2025.

19. Brazosport Independent School District, Brazoria County, and Port Freeport (among others) have Chapter 313 and 312 agreements capping the taxable portion of the new investment. For instance, Brazosport ISD's valuation is limited to $ 30M for each tranche. Thus, most of the $ 6-7B in new tax base is effectively shielded from ordinary property tax for 10 to 25 years.

20. Since 2013 Freeport LNG has purchased roughly 70 percent of the private real estate in Quintana, expanding a federal "blast zone" radius surrounding its liquefied-natural-gas export facility. Those acquisitions have further depressed the City's ad valorem base. The holding company for Freeport LNG is FLIQ Common Facilities LLC, an entity listed under Owner ID Numbers 1109163 and 1179501 in the tax rolls of the Brazoria County Appraisal District. Currently, FLIQ Common Facilities LLC possesses 429 Quintana residential properties valued on the tax rolls at $ 8,148,300. Exhibits 18 and 19.

B. **Conflicted City Council**

21. The majority of the present City Council is either directly employed by Freeport LNG earn > 10 % of gross income from the company, or (c) claims residency at property owned by Freeport LNG or its subsidiaries. Yet, no member has filed an affidavit or abstained from voting as required by Tex. Loc. Gov't Code § 171.004.

22. One of the greater violators is Venanzio "Mike" Cassata, the putative Mayor of Quintana, and a long-standing member of the Quintana City Council. Cassata has claimed residency in Quintana, Texas at an address owned by a Freeport LNG subsidiary, for purposes of being elected. However, Cassata actually resides at 28722 Champions Drive, Magnolia, Texas 77355, maintaining a homestead claim at that residence. Exhibit 1, 21-1 through 21-4. Additionally, Cassata maintains his residence to be at that location on his Texas Driver's License. Exhibit 2. Most importantly, Cassata falsely filed his sworn Application to be Placed On the Ballot listing his permanent place of residence as the Quintana address. Exhibit 14. Clearly, the Notary for this application failed to note the difference between the permanent address from his Texas Driver's License (Exhibit 2) and the Quintana address. The Notary, Nicole Sams is employed as a Senior Environmental Specialist at Freeport LNG. Exhibit 20. Lastly, Claudia Maria Cassata, Cassata's spouse falsely registered her residence as 703 Burnett Street, Freeport, Texas (Exhibit 22) for the purpose of voting for her spouse and to provide an anchor of legitimacy to his false candidacy. Exhibit 17.

23. The City Attorney, Alan Petrov, when informed by telephone conference on June 4, 2025, of Cassata's illegal residence, his response as nearly as can be recalled was that he supposed that was a risk that Cassata had decided to take.

24. Councilwomen Judith Camille Tyner and Sue Ann Tuley purport to share an abode at 914 Gulf Street in Quintana, a 546 square foot residence owned by Tyner. Exhibit 3, 4. However, Tuley's Driver's License is registered at 502B Sundial Street in Surfside Beach. Exhibit 5. Additionally, Tyner lists her residence at 818 Ft Velasco Drive in Surfside, Texas as her homestead. Exhibit 6, 16.

25. Councilman Steve Alongis has been previously employed to perform landscaping services for Freeport LNG and its associated entities. Steve Alongis has sold four personal properties (homes) to Freeport LNG entities in the past few years. Exhibits 10, 11, 12, and 15.

26. Councilwoman Rebecca Button is employed as a Senior Regulatory Affairs Specialist for Freeport LNG. Exhibit 23.

27. Shari Wright, the outgoing Mayor of Quintana, was employed on a full-time basis as a Training Coordinator for Freeport LNG. Exhibit 9.

## C. Plaintiff's Protected Speech

28. In March 2025, during an open meeting, Plaintiff advised the Council that it should consider renegotiating the PILOT rate or failing agreement, allowing the tract to revert to the city and begin collection of ad valorem taxes. Such a move could substantially increase the city's revenue. For instance, a tax rate of $0.0217 per $100 would match the amount currently paid by Freeport LNG through PILOT. The legal ceiling for a Type-A general-law city is $0.25 per $100, meaning the city could reap as much as $17.2 million in the legal extreme.

29. A meeting with Freeport LNG was set for shortly after Plaintiff's return from vacation. She was terminated before that meeting occurred.

## D. Retaliatory Firing Without Due Process

30. On April 23, 2025—eight days after her disclosures—the Mayor announced in an unposted "executive session" that the Council had "lost confidence" in Plaintiff. By a

3–2 vote, and after having been informed by legal counsel that they could not make the termination immediate, she was placed on a 30-day suspension. This action was, however, a constructive discharge due to its retaliatory nature in which her personal property was removed from City Hall, barring her access to City Hall, and terminating her computer access.

31. Plaintiff received no written notice of charges, no opportunity to respond, and no post-termination hearing, despite a City Manager contract guaranteeing termination "only for cause" and providing pre-disciplinary procedures. This created a constitutionally protected property interest in continued employment.

**E. Damages**

32. Plaintiff lost salary ($180,000 annually), TMRS service credit, and professional reputation. She suffers emotional distress, sleep loss, and anxiety.

**V. CAUSES OF ACTION**

**Count 1 – First and Fourteenth Amendment Violations (42 U.S.C. § 1983)**
**(Against all individual defendants; City under Monell – Injunctive Relief Only)**

33. Plaintiff realleges paragraphs 6 through 32.
34. Plaintiff spoke as a citizen on a matter of public concern—tax illegality and governmental integrity. Her speech was a motivating factor in Defendants' decision to terminate her. Defendants cannot show they would have fired her absent the speech. Their conduct violated clearly established law. See *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Anderson v. Valdez*, 845 F.3d 580 (5th Cir. 2016).

## Count 2 – Conspiracy and Joint Action (42 U.S.C. § 1983)
**(Against all defendants, including Freeport LNG; Damages Not Sought Against City )**

35. Plaintiff realleges paragraphs 6 through 32.

36. Defendants reached an understanding to retaliate against Plaintiff to preserve Freeport LNG's PILOT arrangement. Overt acts include the unposted executive session, orchestrated vote, and instantaneous lockout. Under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), Freeport LNG's participation rendered it a state actor.

## Count 3 – Civil RICO (18 U.S.C. § 1962(b))
**(Against Freeport LNG and Individual Defendants in Their Individual Capacities)**

37. Plaintiff incorporates paragraphs 6 through 32 by reference.

38. This cause of action arises under 18 U.S.C. § 1962(b), which makes it unlawful for any person to acquire or maintain, directly or indirectly, any interest in or control of any enterprise engaged in, or the activities of which affect, interstate commerce, through a pattern of racketeering activity.

39. The "enterprise" is the Town of Quintana—a municipal legal entity engaged in interstate commerce through its governance over infrastructure, permitting, land use, and regulatory agreements concerning liquefied natural gas (LNG) facilities with multibillion-dollar valuations. The Town negotiates PILOT contracts and regulatory conditions with Freeport LNG, a private energy company whose operations directly affect national and international commerce.

40. Defendants, acting individually and in concert, acquired and maintained control over the Town of Quintana through a pattern of racketeering acts that enabled them to fraudulently:

    1. Obtain public office through materially false residency representations;
    2. Maintain unlawful officeholding by concealing disqualifying financial conflicts;

> 3. Form a quorum of conflicted or unqualified actors to vote on governmental matters;
>
> 4. Retaliate against Plaintiff for exposing these violations and threatening Freeport LNG's favorable arrangements.

41. The racketeering acts that facilitated this control include:

**a. Wire and Mail Fraud (18 U.S.C. §§ 1341, 1343):**

> Venanzio "Mike" Cassata knowingly submitted a false sworn Application for Place on the Ballot on or about February 11, 2025, misrepresenting his permanent residence as 703 Burnett Street, a Freeport LNG-owned address, while claiming a homestead in Montgomery County. (Exhibits 1, 2, 14).
>
> The City Secretary transmitted this filing by email and/or internal routing to the City Attorney, who knowingly took no action to challenge or correct the submission.
>
> Claudia Cassata, his spouse, falsely registered to vote at the same Quintana address to legitimize his candidacy. (Exhibit 17).

**b. Honest Services Fraud (18 U.S.C. § 1346):**

> Multiple Councilmembers, including Tyner, Tuley, Button, Wright, and Alongis, knowingly failed to disclose material financial conflicts of interest, despite receiving income from or owning property tied to Freeport LNG. These omissions violated Tex. Loc. Gov't Code § 171.004 and federal standards of honest services. Exhibits 7, 8, 9, 10, 11, 12, and 13.
>
> Councilmembers used their offices to protect Freeport LNG's interests, including suppressing oversight of the PILOT agreement and blocking renegotiation efforts.

12 | Page

**c. Obstruction of Governmental Proceedings:**

On April 23, 2025, the Mayor and conflicted Councilmembers conducted an unposted "executive session" and voted in an unpublicized meeting to suspend and effectively terminate Plaintiff, stripping her access and barring her from City Hall.

These actions violated Texas's Open Meetings Act and the City Administrator's contractual and constitutional rights to due process.

**d. Retaliation Against a Whistleblower:**

Plaintiff's protected disclosures regarding Freeport LNG's tax avoidance and Councilmembers' conflicts directly preceded her termination, in violation of Texas Gov't Code ch. 554.

42. These predicate acts were the **proximate mechanism** by which Defendants obtained and perpetuated their control of the Town of Quintana. Defendants could not have qualified for office, achieved quorum, or cast votes without the fraudulent filings and concealments described above.

43. This pattern of racketeering activity occurred over multiple years, demonstrating both **closed-ended continuity** (a series of repeated and related acts over time) and **open-ended continuity** (a threat of ongoing racketeering activity to maintain power and protect Freeport LNG's economic interests). See 18 U.S.C. § 1961(5).

44. Freeport LNG orchestrated or acquiesced in this scheme to avoid lawful taxation and public scrutiny. The company is a direct beneficiary of the corrupted enterprise and its influence over Council actions, including Plaintiff's removal prior to scheduled discussions over PILOT renegotiation.

45. Each Defendant knowingly and willfully participated in at least two acts of racketeering activity, and those acts were related and continuous, forming a pattern of conduct aimed at maintaining unlawful control of municipal authority for private economic gain.

46. As a direct and foreseeable result of Defendants' racketeering activity and their control over the Town of Quintana, Plaintiff suffered injury to her property interest in continued employment, wages, pension credits, and professional reputation.

47. Plaintiff seeks treble damages, attorney's fees, and costs pursuant to 18 U.S.C. § 1964(c).

**Count 4 – Ultra Vires Acts (Texas Law – Prospective Injunctive Relief Only)**
**(Against Mayor Cassata and Councilmembers Tyner, Tuley, Alongis, and Button in their official capacities)**

48. Plaintiff incorporates by reference paragraphs 6 through 32 above.

49. Plaintiff seeks prospective declaratory and injunctive relief under Texas law against municipal officials who acted without legal authority in violation of clearly established statutory limitations on officeholding. The challenged actions—including Plaintiff's termination—were ultra vires because:

Mayor Cassata did not lawfully reside within the city limits as required by Texas law;

Council members Tyner and Tuley misrepresented their domiciles and voted on matters from which they should have been disqualified under Tex. Loc. Gov't Code § 171.004;

None of the council members disclosed their conflict of interests as employees of Freeport LNG Development, L.P. or as those who had received more than 10 percent of their income from Freeport LNG Development L.P. and its associated entities.

The vote to terminate Plaintiff was conducted in violation of Open Meetings laws and lacked a lawful quorum free of financial conflict or disqualification.

50. Under Texas law, municipal officials may be sued in their official capacities for prospective relief to prevent or nullify acts that exceed their lawful authority. See *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009). Because these officials acted beyond the scope of their lawful authority and in violation of governing rules of qualification, conflict disclosure, and open government, Plaintiff seeks an injunction against any enforcement or reliance on the April 23, 2025, termination vote.

51. Plaintiff seeks a declaration that the termination vote was ultra vires and void and requests an injunction prohibiting the disqualified officials from taking further employment actions absent legal qualification and quorum compliance.

### Count 5 – RICO Conspiracy (18 U.S.C. § 1962(d))
**(Against Freeport LNG and All Individual Defendants in Their Individual Capacities)**

52. Plaintiff re-alleges paragraphs 6 through 32 and incorporates by reference all allegations in Counts 1 through 3.

53. Defendants knowingly and willfully conspired to violate 18 U.S.C. § 1962(b), by agreeing to acquire and maintain control over the Town of Quintana through a pattern of racketeering activity.

15 | P a g e

54. Defendants formed an agreement—explicit or tacit—to use their fraudulent candidacies, concealed financial conflicts, and coordinated municipal actions to preserve Freeport LNG's favorable tax arrangements and eliminate any internal opposition to such arrangements, including Plaintiff.

55. In furtherance of the conspiracy, at least one conspirator committed overt predicate acts, including:

Filing false public records to qualify for office;

Using mail and wire communications to transmit fraudulent filings and suppress objections;

Failing to disclose material financial conflicts of interest while voting on matters affecting Freeport LNG;

Retaliating against Plaintiff for exposing the corruption and proposing renegotiation of the PILOT agreement;

Participating in an unlawful, unposted meeting to remove Plaintiff without notice, hearing, or process.

56. Each Defendant knew the unlawful objectives of the conspiracy, agreed to facilitate them, and took steps in furtherance of the scheme. Whether or not each Defendant personally committed two predicate acts, each agreed that others would commit acts of racketeering to achieve the conspiracy's aims.

57. As a result of Defendants' conspiracy, Plaintiff suffered injuries to her employment, income, professional standing, and constitutional rights.

58. Plaintiff seeks treble damages, costs, and attorney's fees under 18 U.S.C. § 1964(c).

## VI. REQUEST FOR INJUNCTIVE & DECLARATORY RELIEF

59. Plaintiff realleges paragraphs 6 through 32.

60. Defendants may assert that their actions are shielded under the de facto officer doctrine. However, that doctrine does not apply here. The disqualifications of the Mayor and multiple Councilmembers were material, publicly known, and formally challenged through quo warranto referrals filed with the Brazoria County District Attorney. Their conduct was not ministerial or undertaken in good faith reliance on official status, but deliberate, retaliatory, and ultra vires. Moreover, the actions challenged herein—including Plaintiff's termination without lawful process—were constitutionally void. See *Ryder v. United States*, 515 U.S. 177 (1995); *State ex rel. City of Mineola v. Smith*, 79 S.W.2d 1023 (Tex. 1935).

61. Pursuant to 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 65, Plaintiff requests:

A temporary restraining order and preliminary injunction reinstating her with back pay, pending final judgment;

A declaration that the termination violated the First and Fourteenth Amendments and is null and void;

An injunction prohibiting Defendants from further retaliatory acts and requiring a conflict-free quorum before any employment action.

17 | Page

## VII. DAMAGES

62. Plaintiff seeks:

Back pay, front pay, and lost benefits;

Compensatory damages for emotional distress;

Punitive damages against individual defendants only (excluding the City);

Pre- and post-judgment interest;

Attorney's fees and costs under 42 U.S.C. § 1988 and Tex. Gov't Code § 554.003.

## VIII. JURY DEMAND

63. Plaintiff respectfully demands trial by jury on all issues so triable.

## IX. PRAYER

WHEREFORE, Plaintiff respectfully requests that Defendants be cited to appear and that, upon final trial, the Court enter judgment for Plaintiff for: (a) Injunctive and declaratory relief against official-capacity defendants; (b) Monetary damages solely against the individual defendants in their personal capacities; and for such other and further relief, at law or in equity, to which she may be justly entitled.

                                 Respectfully submitted,

                                 CLAY THOMAS PLLC
                                 By: */s/ Clay Dean Thomas*
                                 Clay Dean Thomas
                                 Texas Bar No. 24088520
                                 15344 West State Highway 21
                                 Douglass, Texas 75943

18 | P a g e

TEL: (936) 715-7144
legal@claythomaspc.com

**COUNSEL FOR PLAINTIFF**

## INDEX OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 1 | Property Tax 28722 Champions Drive, Magnolia, Texas |
| 2 | TDL Cassata |
| 3 | TDL Tyner |
| 4 | Property Search 914 Gulf Street |
| 5 | TDL Tuley |
| 6 | Property Search 818 Ft Velasco |
| 7 | TDL Button |
| 8 | Property Search 2535 Compass Court |
| 9 | Wright LinkedIn Page |
| 10 | Property Search ID 240766 |
| 11 | Property Search ID 647820 |
| 12 | Property Search ID 657025 |
| 13 | Property Search ID 240768 |
| 14 | Mike Cassata Election Application |
| 15 | Steve Alongis Election Application |
| 16 | Sue Tuley Election Application |
| 17 | TDL Claudia Cassata |
| 18 | BCAD ID No 1109163 |
| 19 | BCAD ID No 1179501 |
| 20 | Sams LinkedIn Page |
| 21-1 | 28722 Champions Drive |
| 21-2 | 28722 Champions Drive |
| 21-3 | 28722 Champions Drive |
| 21-4 | 28722 Champions Drive |
| 22 | 703 Burnett Street |
| 23 | Button LinkedIn Page |