## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **TAMMI LOCKHART CIMIOTTA,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:25-cv-00220** |
| | § | **JURY DEMAND** |
| **CITY OF QUINTANA, TEXAS,** *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

### QUINTANA DEFENDANTS' MOTION TO DISMISS
### PLAINTIFF'S AMENDED ORIGINAL COMPLAINT

Defendants CITY OF QUINTANA, TEXAS ("City"), MAYOR VENANZIO "MIKE" CASSATA ("Mayor Cassata"), COUNCILMEMBER JUDITH CAMILLE TYNER ("Councilmember Tyner"), COUNCILMEMBER SUE ANN TULEY ("Councilmember Tuley"), COUNCILMEMBER STEVE ALONGIS ("Councilmember Alongis"), COUNCILMEMBER REBECCA BUTTON ("Councilmember Button"), and FORMER-MAYOR SHARI LYNN WRIGHT ("Wright") (collectively referred to as the "Quintana Defendants") move the Court for dismissal of Plaintiff Tammi Lockhart Cimiotta's ("Cimiotta") First Amended Complaint ("Amended Complaint") under Federal Rule of Civil Procedure 12(b)(6) because Cimiotta fails to state a plausible claim to relief for violations of the First Amendment, Fourteenth Amendment, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and federal conspiracy pursuant to 42 U.S.C. § 1983 ("Section 1983"), and in support the Quintana Defendants would show the Court as follows:

# I.     INTRODUCTION

Based on the independent grounds, fully briefed below, dismissal is warranted as a matter of law, and the Quintana Defendants respectfully requests that the Court grant this Motion and dismiss with prejudice Cimiotta's retaliation claims under the First Amendment; the Fourteenth Amendment; RICO claims under Section 1962(b), Section 1962(c), and Section 1962(d); and Cimiotta's conspiracy claim under Section 1983.

Cimiotta's First Amendment claim against the Individual Quintana Defendants in their official capacity are duplicative of her claims against the City and must be dismissed. Additionally, the Individual Quintana Defendants are entitled to qualified immunity in connection with Cimiotta's claim under the First Amendment and she has not alleged facts showing otherwise. Assuming *arguendo*, Cimiotta can overcome the Individual Quintana Defendants' entitlement to qualified immunity, she still fails to plead any facts showing she engaged in protected speech under the First Amendment. Cimiotta also fails to allege facts establishing any of the elements to support a *Monell* claim under the First Amendment.

Cimiotta's claim under the Fourteenth Amendment is also subject to dismissal because the exhibits attached hereto show that she was provided a pre-termination hearing to respond to and address the City Council regarding its lack of confidence finding and whether her employment should be terminated but she failed to attend the hearing. Like her First Amendment claim, Cimiotta fails to allege facts establishing any of the *Monell* elements under the Fourteenth Amendment.

Other than her conclusory assertions, Cimiotta's fails to allege facts that support a conspiracy claim under Section 1983. Specifically, Cimiotta fails to allege facts showing

the Quintana Defendants reached or were part of any agreement—between themselves or Freeport LNG—to violate her protected right.

Cimiotta also fails to state a claim under Section 1962(b), Section 1962(c), and Section 1962(d). First, Cimiotta does not allege any facts showing she suffered an injury to support a claim under Section 1962(b). Second, Cimiotta fails to allege facts that show any alleged RICO activity injured her, or that any of the alleged RICO activities provide her standing to sue under RICO. Lastly, because Cimiotta does not allege facts establishing any RICO offense, she has not alleged a conspiracy under RICO, let alone, that the Quintana Defendants were part of or reached an agreement to commit a RICO offense.

Lastly, because all of Cimiotta's federal causes of action warrant dismissal, her only remaining cause of action is a state law claim for ultra vires. With the federal causes of action dismissed this Court does not have supplemental jurisdiction over this remaining claim, and, therefore, it is subject to dismissal (without prejudice) as well.

## II. NATURE & STAGE OF PROCEEDINGS

On July 14, 2025, Cimiotta filed her Original Complaint.[1] On July 24, 2025, Cimiotta filed her Amended Complaint.[2] On August 14, 2025, the Quintana Defendants provided Cimiotta with their waivers of service.

Cimiotta asserts the following causes of action in her Amended Complaint: (1) First Amendment retaliation; (2) Fourteenth Amendment due process; (3) conspiracy under Section 1983; RICO causes of action under (4) Section 1962(b); (5) Section 1962(c); (6)

---

[1] Pl.'s Original Compl., Dkt. No. 1.
[2] Am. Pl.'s Orig. Compl., Dkt. No. 8.

Section 1962(d); and an ultra vires claim. The Quintana Defendants now timely file this Motion seeking dismissal of the following claims: (1) First Amendment retaliation; (2) Fourteenth Amendment due process; (3) conspiracy under Section 1983; RICO causes of action under (4) Section 1962(b); (5) Section 1962(c); and (6) Section 1962(d).

### III. FACTUAL BACKGROUND[3]

The City is a small coastal town located on the Gulf of Mexico.[4] It is home to about 100 permanent residents.[5] Cimiotta served as the City Administrator until her termination.[6]

Cimiotta alleges that Freeport LNG Development, L.P. ("Freeport LNG") has an Industrial District Contract ("Contract") with the City which provides that Freeport LNG will compensate the City for Freeport's LNG infrastructure within the City limits and Freeport LNG's use of the port.[7] The contract between Freeport LNG and the City utilizes an automatic escalator for determining Freeport LNG's tax liability which is based on a schedule percentage for the Houston, Galveston, and Brazoria region.[8]

Cimiotta alleges that a majority of the City Council has some sort of tie to Freeport LNG.[9] The ties Cimiotta alleges are that members of the City Council are either employed by Freeport LNG or reside in a home owned by Freeport LNG.[10]

---

[3] Although the Quintana Defendants deny almost all of Cimiotta's factual allegations, the factual allegations in her Amended Complaint are taken as true only for purposes of this Motion.
[4] Town of Quintana, Texas: About the Town of Quintana, https://quintanatx.org/about/ (lasted visited Oct. 14, 2025.
[5] *Id.*
[6] Am. Pl.'s Orig. Compl., ¶ 6.
[7] *Id.* at ¶ 15.
[8] *Id.* at ¶ 16.
[9] *Id.* at ¶ 21.
[10] *Id.* at ¶¶ 21–27.

As the City Administrator, Cimiotta posted the agendas for City Council meetings and attended such meetings.[11] In March 2025, Cimiotta claims she advised the City Council—during an Open Meeting—that it should reconsider renegotiating the Contract and tax rate with Freeport LNG.[12] Then Cimiotta alleges that "eight (8) days after her disclosures" during the March 2025 Open Meeting, on April 23, 2025,[13] Mayor Cassata announced in an **unposted** "executive session" that the City Council had lost confidence in Cimiotta.[14] However, the only City Council meeting in March 2025 occurred on March 18, 2025.[15] Contrary, to Cimiotta's contention, April 23, 2025 is clearly more than eight (8) days apart from March 18, 2025. Additionally, the City Council meeting on April 23, 2025—where the City Council voted to suspend Cimiotta—was properly posted on April 17, 2025, **which Cimiotta herself attested to.**[16]

Cimiotta admits that the City Council suspended her, which was the City Council's right under Cimiotta's employment agreement.[17] Cimiotta's allegation that she received "no written notice of charges, no opportunity to respond, and no post-termination hearing," are false.[18] First, Cimiotta's own allegations show that she was informed that City Council had voted to suspend her employment pending the finality of its finding a lack of

---

[11] *See* Ex. A, Town of Quintana Agenda for Regular Council Meeting; Ex. B, Town of Quintana Agenda Special Counsel Meeting
[12] *Id*. at ¶ 28.
[13] The Quintana Defendants use the dates provided in Cimiotta's Amended Complaint, although there is presumably an error in the dates and/or timing described by Cimiotta.
[14] *Id*. at ¶ 30.
[15] *See* Ex. A, Town of Quintana Agenda for Regular Council Meeting.
[16] *See* Ex. B, Town of Quintana Agenda Special Counsel Meeting; Ex. C, Minutes from April 23, 2025, City Council meeting.
[17] *See* Ex. D, Cimiotta's Employment Agreement, § 4.
[18] Am. Pl.'s Orig. Compl., ¶ 31.

confidence in Cimiotta.[19]  Second, Cimiotta was given an opportunity to respond to and address the City Council at a public meeting on June 3, 2025 pursuant to her employment agreement, but Cimiotta and her attorney failed to apprise themselves of his opportunity and did not show up.[20]  Lastly, Cimiotta's employment agreement did not require a post-termination hearing.[21]

## IV.    ARGUMENTS & AUTHORITIES

### A.    Dismissal Under Federal Rule of Civil Procedure 12(b)(6) is Appropriate.

"Rule 12(b)(6) allows dismissal if a plaintiff fails 'to state a claim upon which relief can be granted.'"  *Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638, 640 (S.D. Tex. 2023) (Rosenthal, J.) (quoting Fed. R. Civ. P. 12(b)(6)).  To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); In order to survive a motion to dismiss, a plaintiff must "plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Huynh v. Walmart Inc.*, 30 F.4th 448, 453 (5th Cir. 2022); *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 527 (5th Cir. 2018) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

"In order to survive a motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face."  *Huynh v. Walmart Inc.*, 30 F.4th 448, 453

---

[19] *Id.* at ¶ 30.
[20] *See* Ex. D, Cimiotta's Employment Agreement, § 4; Ex. E, Minutes from June 3, 2025, City Council meeting.
[21] *See* Ex. D, Cimiotta's Employment Agreement, § 4.

(5th Cir. 2022); *Smit v. SXSW Holdings, Inc*., 903 F.3d 522, 527 (5th Cir. 2018) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In reviewing the pleadings, a court accepts all well-pleaded facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corrections, L.L.C.,* 996 F.3d 302, 306–07 (5th Cir. 2021) (citing *Heinze v. Tesco Corp*., 971 F.3d 475, 479 (5th Cir. 2020)). But the court does not accept "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions" as true. *Plotkin v. IP Axess Inc*., 407 F.3d 690, 696 (5th Cir. 2005). Moreover, "[t]o withstand a Rule 12(b)(6) motion, a complaint must include 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Cimiotta's Amended Complaint fails to state any plausible claim for relief for any claim and should be dismissed.

**B.** **The Court May Consider the Attachments to the Quintana Defendants' Motion Because Cimiotta Has Referred to the Documents or the Documents are Public Record.**

Courts may rely on "[d]ocuments that a defendant attaches to a motion to dismiss . . . part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim." *Harris v. Galveston Cnty*., No. 3:24-CV-223, 2025 WL 1019969, at *1 (S.D. Tex. Apr. 4, 2025) (Brown, J.) (citing *Hodge v. Engleman*, 90 F.4th 840, 844 (5th Cir. 2024)

(quotations and citation omitted); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (citation omitted)). Moreover, the Court may consider the City's publicly posted agendas and meeting minutes when analyzing the Quintana Defendants' Motion because they are a public record. *See Blessett v. Texas*, No. 3:22-CV-9, 2022 WL 2182614, at *2 (S.D. Tex. May 17, 2022) (Brown, J.); *Ramos v. Erwin*, 723 F. Supp. 3d 529, 535 (S.D. Tex. 2024) ("When deciding a motion to dismiss, a court may also consider matters of public record."); *Johnson v. Bowe*, 856 F. App'x 487, 492 (5th Cir. 2021) (Because "courts may take judicial notice of public records like a city council's meeting minutes, the district court also properly considered the minutes as part of the pleadings."); *Adams v. City of Taft*, No. 2:22-CV-00218, 2023 WL 2695398, at *2 (S.D. Tex. Feb. 28, 2023) (Libby, M.J.) ("[C]ourts may take judicial notice of public records like a city council's meeting minutes and taking judicial notice of them does not transform [the] motion into a motion for summary judgment."); *Thompson v. McGehee*, 761 F. Supp. 3d 937, 940 (N.D. Tex. 2025) (A city council agenda is a public record.).

Here, the Quintana Defendants attach the following exhibits to support their Motion: (1) Exhibit A – March 18, 2025 agenda; Exhibit B – April 23,2025 agenda; Exhibit C - April 23,2025 meeting minutes; Exhibit D – Cimiotta's Employment Agreement; and Exhibit E – June 3, 2025, meeting minutes.

First, this Court may consider Cimiotta's employment agreement because she refers to and quotes it in her Amended Complaint.[22] Furthermore, Cimiotta's employment

---

[22] Am. Pl.'s Orig. Compl., ¶ 31.

agreement is central to her claims because the alleged violation of it serves as a basis for her Fourteenth Amendment Due Process and RICO allegations.[23]

Additionally, the City Council's agendas and meeting minutes are government-created, public documents readily available to the public, including from the City's website.[24]  Moreover, the City Council's agendas and meeting minutes—some of which Cimiotta created and signed herself—are central to Cimiotta's claims because they documents and refute her allegations that that she complained to the City Council about the City's agreement with Freeport LNG; was suspended during an unposted session; and not provided a pre-termination hearing

## C.    Cimiotta Fails to State a First Amendment Retaliation Claim Against the Individual Quintana Defendants.

Cimiotta's claim under the First Amendment fails for multiple reasons.  First, Cimiotta's claims against the Individual Quintana Defendants, in their official capacity, should be dismissed because these claims are duplicative of her claims against the City.  Second, Cimiotta's own pleading admissions show that her alleged statements to the City's City Council during the March 2025 open meeting was not protected speech because it was made in her capacity as the City Administrator based on information she learned through her official duties as City Administrator.  Finally, Cimiotta's claim under the First Amendment is subject to dismissal because she fails to allege facts that overcome the Individual Quintana Defendants' entitlement to qualified immunity.

---

[23] Am. Pl.'s Orig. Compl., ¶ ¶ 31; 33–34
[24]  The City Council's agendas and meetings minutes are publicly available here:  https://quintanatx.org/meetings/ (last visited on October 14, 2025).

1.  **Cimiotta's First Amendment claim against Mayor Cassata and Councilmembers Tyner, Tuley, Alongis, Button, and Wright in their official capacities must be dismissed because they are duplicative of her claims against the City.**

Cimiotta's claims against the Individual Quintana Defendants in their official capacities are nothing more than a suit against the City. "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); accord *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 417 (5th Cir. 2018). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Id.* at 166. "It is not a suit against the official personally, for the real party in interest is the entity." *Id.* Accordingly, "[Cimiotta's] claims against [the Individual Quintana Defendants] in their official capacities [] fail." *Rayborn*, 881 F.3d at 417.

2.  **Cimiotta fails to allege facts that show she engaged in protected speech under the First Amendment.**

Cimiotta's Amended Complaint is absent any facts that show she **spoke as a private citizen** on a matter of public concern in March 2025 when she discussed the Freeport LNG agreement. "While government employees are not stripped of their First Amendment right to freedom of speech by virtue of their employment, this right is not without exception." *Hurst v. Lee Cnty.*, 764 F.3d 480, 484 (5th Cir. 2014). The Fifth Circuit "has long employed a four-prong test to determine whether the speech of public employees is entitled to constitutional protection." *Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016). "A

plaintiff must establish that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Id*.

With respect to second prong of the Fifth Circuit's test for establishing a First Amendment retaliation claim, "[Cimiotta] must show . . . that [she] 'spoke as a citizen on a matter of public concern.'" *Harmon v. Dallas Cnty.*, 927 F.3d 884, 892 (5th Cir. 2019) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). **"Only speech made in one's capacity as a citizen is entitled to First Amendment protection."** *Howell*, 827 F.3d at 523 (emphasis added). **"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."** *Id*. (quoting *Garcetti*, 547 U.S. at 421) (emphasis added); *Hurst*, 764 F.3d at 484 ("To decide if a public employee is speaking as an employee or as a private citizen on a matter of public concern, we analyze whether the person spoke pursuant to [her] official duties."). "To determine if the plaintiff was speaking as a citizen or as a public employee, courts may consider the relationship between the speech and public job, whether the employee spoke internally up the chain of command, whether the speech resulted from special knowledge acquired as an employee." *Foerster v. Bleess*, No. 4:20-CV-1782, 2020 WL 6588731, at *4 (S.D. Tex. Oct. 16, 2020) (Gilmore, J.), aff'd by No. 20-20583, 2022 WL 38996 (5th Cir. Jan. 4, 2022); *Johnson v. Hurtt*, 893 F. Supp. 2d 817, 829 (S.D. Tex. 2012) (Hittner, J.) ("to determine whether speech was made pursuant to an individual's

official duties, courts review a number of factors, including the internal versus external nature of the speech, the employee's formal job description, whether the employee spoke on the subject matter of his or her employment, and whether the speech resulted from special knowledge gained as an employee."). Here, the Amended Complaint and attached exhibits establish that Cimiotta was *not* speaking as a citizen, and, therefore, did not engage in First Amendment-protected speech.

Cimiotta admits three (3) important facts that are critically fatal to her First Amendment retaliation claim. First, at the time the subject incidents that give rise to her claims in this lawsuit occurred, Cimiotta admits that she was the City Administrator.[25] As demonstrated by the exhibits to this Motion, Cimiotta's duties as City Administrator included attending all city council meetings and preparing City Council meeting agendas and minutes.[26]

Second, Cimiotta admits that she advised the City Council about reassessing the Contract with Freeport LNG and Freeport LNG's tax liability which was part of her official duties as the City Administrator.[27] In fact, more than two (2) pages of Cimiotta's Amended Complaint recite specific details about the Contract and Freeport LNG's appraisals and tax liability information.[28] As the City Administrator (also referred to as the "City Secretary"), which is the highest employee position in the City, Cimiotta was given "the powers and duties of the office of the assessor and collector of taxes and the powers and duties of the

---

[25] Am. Pl.'s Orig. Compl., ¶ 31.
[26] *See* Ex. D, Cimiotta's Employment Agreement, §§ 2(B)(1); 2(B)(3); 2(B)(13).
[27] Am. Pl.'s Orig. Compl., ¶ 28; Ex. D, Cimiotta's Employment Agreement, §§ 2(B)(3); 2(B)(4).
[28] Am. Pl.'s Orig. Compl., ¶¶ 15–20.

office of treasurer[.][29]  Therefore, the Court may reasonably infer Cimiotta obtained or was made aware of this information by virtue of her position as City Administrator.

Lastly, Cimiotta admits that the only purported protect speech she engaged in was her communication with the City Council during its regular meeting in March 2025.[30]  As the City Administrator, Cimiotta directly reported to and was supervised by the City Council.[31]

Because Cimiotta was the City Administrator, she had inside, detailed knowledge about the Contract with Freeport LNG and the City's taxing of Freeport LNG, of which she would not otherwise be aware or have easy access to.  Accordingly, when Cimiotta raised this topic with City Council it was not protected speech because speech "reflecting special knowledge gained through the course of performing [her] official duties is indicative of speech as a public employee." *Foerster*, 2020 WL 6588731 at *4 (citing *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007)).  Moreover, Cimiotta's comments were made to her direct supervisors, the City Council—further undercutting any First Amendment protection.  *See Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008).  Although Cimiotta's alleges that she spoke on matters of public concern, tax illegality and governmental integrity, "even speech of that sort is not protected by the First Amendment so long as it was made pursuant to [her] official duties." *Langston v. San Jacinto Jr. Coll.*, 25 F. Supp. 3d 1009, 1015 (S.D. Tex. 2014) (Ellison, J.) (citing *Williams*, 480 F.3d at 692).

---

[29] *See* Quintana, Tex., Ordinances, art. III, § 2-88 (1981).
[30] Am. Pl.'s Orig. Compl., ¶ 28.
[31] *See* Ex. D, Cimiotta's Employment Agreement, § 2.

Based on the foregoing, Cimiotta's own admissions show that she did not speak as a private citizen when she spoke to City Council during the March 2025 regular meeting.

> **3.** **Assuming _arguendo_, Cimiotta has stated a First Amendment claim, her claim is still subject to dismissal because Mayor Cassata and Councilmembers Tyner, Tuley, Alongis, Button, and Wright are entitled to qualified immunity.**

Cimiotta's First Amendment claim against the Individual Quintana Defendants in their individual capacities is barred by qualified immunity. First Amendment retaliation claims are subject to the defense of qualified immunity. *Howell*, 827 F.3d at 524–26.

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Benson v. Galveston Cnty.*, No. 3:21-CV-200, 2022 WL 17847242, at *3 (S.D. Tex. Nov. 29, 2022) (Brown, J.) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Benson*, 2022 WL 17847242 at *3. "To determine whether qualified immunity applies, courts undertake a two-step analysis." *Benson*, 2022 WL 17847242 at *3 (citing *Tolan v. Cotton*, 572 U.S. 650, 655 (2014)). "Courts have discretion to decide the order in which to engage these two prongs." *Id*. Moreover, the "court may rely on either prong of the defense in its analysis." *Benson*, 2022 WL 17847242 at *3. "Regarding the second prong of qualified immunity analysis, a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Howell*, 827 F.3d at 525; *Benson*, 2022

WL 17847242 at *3 ("To say that the law was clearly established, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."). "Once a defendant properly invokes the defense of qualified immunity, the plaintiff bears the burden of proving that the defendant is not entitled to the doctrine's protection." *Howell*, 827 F.3d at 525

As discussed above, the established law unequivocally shows that Cimiotta did not engage in protected activity or obtain any protection under the First Amendment when she advised the City Council that it should reassess the Contract with Freeport LNG and taxing of Freeport LNG when she spoke as the City Administrator about information she gained and learned about through her employment with the City. **Cimiotta has not alleged any facts to the contrary.** Accordingly, Mayor Cassata, Councilmember Tyner, Councilmember Tuley, Councilmember Alongis, Councilmember Button, and Former-Mayor Wright are entitled to qualified immunity and Cimiotta's claim is barred as a matter of law.

**D.      Cimiotta Fails to State a Fourteenth Amendment Due Process Claim Against the Individual Quintana Defendants Because She Was Offered a Pre-Termination Hearing and Failed to Appear.**

It is unclear from the Amended Complaint whether Cimiotta is asserting a Fourteenth Amendment Due Process cause of action separate from her First Amendment claim.[32] To the extent Cimiotta is asserting such a cause of action, it fails as a matter of

---

[32] *See* Am. Pl.'s Orig. Compl., ¶¶ 33–34.  Cimiotta's "First and Fourteenth Amendment Violations" are described as one (1) Count.

law because the public record shows she failed to avail herself of the opportunity to respond to the City Council at a public hearing regarding its finding of lack of confidence in her and whether her employment should be terminated based on such finding.

"To state a Fourteenth Amendment due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018). "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* "In the context of public employment, [t]his principle requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* "[T]he formality and procedural requisites for [a constitutionally-adequate pre-termination hearing] can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id.* "At a minimum, however, an employee facing termination must be given notice and an opportunity to respond before the termination takes effect." *Id.*

Here, the City Council's meeting minutes from its June 3, 2025 meeting—which is a public record—demonstrates that Cimiotta was given an opportunity to attend the meeting and respond to and address the City Council regarding its finding of lack of confidence in her and whether her employment should be terminated.[33] However, as the minutes indicate, Cimiotta and her attorney failed to show up to the meeting.[34] Unlike the

---

[33] *See* Ex. E, Minutes from June 3, 2025, City Council meeting.
[34] *Id.*

plaintiff in *Greene*, Cimiotta was provided with a pre-termination hearing and failed to avail herself of the opportunity. Accordingly, Cimiotta's Fourteenth Amendment Due Process claim fails, as a matter of law.

**E.      Cimiotta Fails to State a *Monell* Cause of Action Against the City Because She Does Not Plead Facts Supporting Each Requisite Element.**

Cimiotta fails to allege any facts supporting any of the requisite elements to establish *Monell* liability against the City. "To state a [Section] 1983 clam against a municipality, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Jackson v. City of Hearne*, 959 F.3d 194, 204 (5th Cir. 2020); *Perdomo v. City of League City*, 765 F. Supp. 3d 613, 625 (S.D. Tex. 2025) (Brown. J.) ("A *Monell* claim has three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."). "[T]o prevail against a municipality under [Section] 1983, a plaintiff must show that the municipality's policy or custom caused the constitutional deprivation." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752 (5th Cir. 2009). "One way plaintiffs may prove *Monell's* municipal policy or custom requirement is to show a persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* at 753. "No liability exists under the doctrine of *respondeat superior* in [Section] 1983 actions." *Id.*; *Perdomo*, 765 F. Supp. at 625 ("Monell liability does not arise via *respondeat superior* but rather a directly attributable . . . official action or imprimatur.").

First, as discussed above, Cimiotta's *Monell* cause of action instantly fails because she has not sufficiently alleged a violation of her constitutional rights under the First or Fourteenth Amendments.

Even if Cimiotta had sufficiently pled a constitutional violation, her *Monell* cause of action would still fail as a matter of law. Cimiotta has not alleged any facts—even generally—that demonstrate the City had a policy or custom of retaliating against individuals who spoke on matters of public concern, or any City policy or custom of not providing due process to City employees. Because Cimiotta has not alleged facts identifying a City policy or custom, it cannot be disputed that she has not alleged any facts showing a deprivation of her constitutional rights, if any, was the cause of the City's policy or custom. Accordingly, Cimiotta's *Monell* claims under the First Amendment and Fourteenth Amendment fail as a matter of law.

**F.    Cimiotta Fails to State a Federal Cause of Action for Conspiracy Against the Quintana Defendants Under Section 1983 Because She Fails to Plead Facts On Both Elements of Her Claim.**

"In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Armstrong v. Ashley*, 60 F.4th 262, 280 (5th Cir. 2023); accord *Rivera v. City of Pasadena*, 555 F. Supp. 3d 443, 462 (S.D. Tex. 2021) (Rosenthal, C.J.) ("For a plaintiff to state a claim for civil conspiracy under § 1983, a plaintiff must allege both a conspiracy involving state action and a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."). "Bald allegations that a conspiracy existed are insufficient to support a claim under §

1983." *Harris v. Wal-Mart Stores Texas, LLC*, No. 3:19-CV-00248, 2020 WL 4726757, at *13 (S.D. Tex. May 6, 2020) (Brown, J.).

Cimiotta's assertion of a conspiracy revolves around the termination of her employment only. Other than Cimiotta's assertions that a majority of the Individual Quintana Defendants had some sort of tie to Freeport LNG through their employment or housing, Cimiotta does not allege any facts showing a meeting of the minds. In fact, Cimiotta's Amended Complaint fails to address, even generally, when, where, and how the Quintana Defendants reached any agreement to violate Cimiotta's protected right. Moreover, Cimiotta's Amended Complaint is absent any facts that Freeport LNG—more importantly the decision makers of Freeport LNG—was aware of or knew that the City intended to terminate Cimiotta's employment or that Freeport LNG was a part of the decision to suspend and terminate Cimiotta's employment with any of the Quintana Defendants. Cimiotta offers nothing more than conclusory conclusions and a restatement of the elements of a Section 1983 conspiracy claim, but no facts that establish a plausible claim to relief under Section 1983.

**G.      Cimiotta's Claims Under Any RICO Cause of Action Against the Individual Quintana Defendants Fail Because She Does Not Allege Facts to Support Causation and She Fails to Allege Facts Showing She Is Entitled to Bring a Claim Under RICO.**

Although Cimiotta alleges a myriad of claims under RICO, each of her claims fail as a matter of law. Congress enacted RICO in order to prohibit conduct involving a pattern of racketeering activity. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006). "There are four substantive RICO violations set out in § 1962." *Allstate Ins. Co. v.*

*Benhamou*, 190 F. Supp. 3d 631, 643 (S.D. Tex. 2016) (Harmon, J.) (citing 18 U.S.C. § 1962(a)–(d)).  "The elements required to state a claim vary according to the particular RICO claim asserted." *Id.*

"RICO creates a civil cause of action for [a]ny person injured in his business or property **by reason** of a violation of section 1962." *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003) (emphasis added); *Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 938 (2025) ("Section 1964(c) provides that [a]ny person injured in his business or property by reason of a violation of [RICO] may sue."); *Jones v. Enter. Rent A Car Co. of Texas*, 187 F. Supp. 2d 670, 676 (S.D. Tex. 2002) (Kent, J.) ("The right to maintain a private RICO action and recover treble damages and attorney's fees extends to "[a]ny person injured in his business or property by reason of a violation of section 1962 . . .").

Cimiotta's Amended Complaint on its face only shows that she asserts claims under Section 1962(b) and Section 1962(d) of RICO.  But substantively Cimiotta's Amended Complaint attempts to assert RICO causes of action pursuant to Section 1962(b), Section 1962(c), and Section 1962(d).[35]  Section 1962(b) provides that "a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering." *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007).  "Subsection 1962(d) prohibits a conspiracy to violate 18 U.S.C. § 1962(a), (b), or (c)." *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 121 (5th Cir. 1996).

---

[35] *See* Am. Pl.'s Orig. Compl., ¶¶ 37–47, 52–58.

"Pursuant to § 1964, a civil RICO plaintiff must show (1) a violation of § 1962, (2) an injury to his or her business or property, and (3) that such injury was proximately caused by a RICO violation." *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023); accord *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 643 (S.D. Tex. 2016) (Harmon, J.) ("To establish that an injury came about by reason of a RICO violation, a plaintiff must show that a predicate offense not only was a but for cause of his injury, but a proximate cause as well.").

Cimiotta's claim under Section 1962(b) fails because she has not alleged any facts showing she suffered an injury. Cimiotta's claims under Section 1962(c)—the predicate RICO activities—also fail because she has not pled facts showing any of the predicate activities injured her and most of the activities she alleges do not provide her with private cause of action. Cimiotta's claim under Section 1962(d) fails because she has not alleged facts establishing a valid RICO offense, or an agreement to commit a RICO offense.

### 1. Cimiotta fails to state a claim under Section 1962(b) of RICO because she has not alleged facts showing she suffered any injury.

The purpose of section 1962(b) was to prohibit the takeover of a legitimate business through racketeering, typically extortion or loansharking." *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 735 F. Supp. 2d 679, 700 (S.D. Tex. 2010) (Jack, J.). "[Cimiotta] must show that [her] injuries were proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activity." *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007); *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 202 (5th Cir. 2015) ("To state a claim under § 1962(b), [the plaintiff] had to show

that its injuries were proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activity—a nexus requirement."). "The injury caused by the acquisition or maintenance must be distinct from the injury caused by the predicate acts under Section 1962(b)." *Flores*, 735 F. Supp.2d at 701. "A claim under Section 1962(b) will be dismissed if the allegations indicate[ ] ... injury resulting from the commission of the predicate acts, and do not suggest a distinct injury to the plaintiff by virtue of acquiring or maintaining an enterprise." *Id*. at 701–702.

Here, a plain reading of Cimiotta's Amended Complaint shows that she has not alleged any injury from the acquisition or maintenance of an enterprise, but rather her injury stems from numerous alleged acts of racketeering.[36] Accordingly, because Cimiotta's alleged injuries result from the distinct racketeering acts—and not the maintenance or acquisition of an interest in an enterprise—she has not stated a claim under Section 1962(b).

**2.    Cimiotta fails to state a RICO claim Against the Individual Quintana Defendants Under Section 1962(c).**

As discussed *supra*, Cimiotta's Amended Complaint does not explicitly state a cause of action for Section 1962(c), but a simple reading of her Amended Complaint shows that substantively Cimiotta attempts to assert multiple claims under Section 1962(c). Cimiotta's claims under Section 1962(c) fail as a matter of law because she fails to allege facts showing any of the alleged acts of racketeering were directed towards her or injured her. "Subsection (c) prohibits any person employed by or associated with any enterprise

---

[36] Am. Pl.'s Orig. Compl., at ¶¶ 40–46.

from participating in or conducting the affairs of the enterprise through a pattern of racketeering activity." *Abraham*, 480 F.3d at 357.

        a.      **Cimiotta's claim that Mayor Cassata engaged in wire and mail fraud fails because she has not alleged facts showing she was injured by such act.**

Likely in tacit acknowledgment that no injury occurred, Cimiotta's Amended Complaint fails to present any facts showing she suffered an injury in connection with the alleged mail and wire fraud. "One of the enumerated crimes is mail fraud." *Benhamou*, 190 F. Supp. 3d at 657. "Section 1341 applies to anyone who knowingly causes to be delivered by mail anything for the purpose of executing any scheme or artifice to defraud." *Id*. "The elements of RICO mail fraud are: (1) a scheme to defraud by means of false or fraudulent representation; (2) interstate or intrastate use of the mails to execute the scheme; (3) the use of the mails by the defendant connected with or incident to the scheme; and (4) actual injury to the plaintiff." *Id*. at 657–58.

Here, Cimiotta makes no allegation that the alleged mail and wire fraud directly injured her. In fact, Cimiotta does not allege the mail and wire fraud injured her at all. Accordingly, her claim as to wire and mail fraud fail because she "fails to allege that she was a target of, or proximately harmed by the fraud." *Id*.

        b.      **The Honest Services Fraud statute is a criminal statute that does not provide Cimiotta with a private cause of action.**

Cimiotta's claim of honest services fraud under 18 U.S.C. § 1836 ("Section 1346") fails, as a matter of law, because it is a criminal statute which does not afford private citizens a cause of action. Section 1346 "encompass only bribery and kickback scheme[.]"

*Skilling v. United States*, 561 U.S. 358, 412 (2010). However, Section 1346 is "a criminal statute defining scheme or artifice to defraud for purposes of the mail fraud statute," and "it is (1) a criminal statute and no criminal claims can be brought by a private individual[.]" *Wije v. Texas Woman's Univ.*, No. 4:14-CV-571-ALM-CAN, 2016 WL 11472335, at *10 (E.D. Tex. Feb. 5, 2016), report and recommendation adopted, No. 4:14-CV-571, 2016 WL 1156514 (E.D. Tex. Mar. 24, 2016), aff'd sub nom. *Wije v. Stuart*, 694 F. App'x 234 (5th Cir. 2017); *Florance v. Buchmeyer*, 500 F.Supp.2d 618, 626 (N.D. Tex. 2007) ("The plaintiff also invokes 18 U.S.C. § 1346 , a criminal statute criminalizing scheme or artifice to defraud. A private party may not enforce criminal statutes through a civil action."); *Wallace v. Access Self Storage Red Oak*, No. 3:17-CV-1602-M-BH, 2017 WL 3017233, at *2 (N.D. Tex. June 20, 2017), report and recommendation adopted, No. 3:17-CV-1602-M-BH, 2017 WL 3016879 (N.D. Tex. July 14, 2017) ("The plaintiff also fails to state a cause of action upon which relief may be granted under this criminal statute."); *House of Raeford Farms of Louisiana, LLC v. Poole*, No. CV 19-271, 2020 WL 13838567, at *1 (W.D. La. Mar. 31, 2020) ("The Court agrees that there is no civil counterpart to Section 1346 and that House of Raeford cannot maintain a claim against the Defendants for honest services fraud under this federal statute."); *Sawyer v. Wright*, No. A-11-CV-002 LY, 2011 WL 13185797, at *5 (W.D. Tex. June 13, 2011), report and recommendation adopted, No. A-11-CA-002-LY, 2011 WL 13185994 (W.D. Tex. July 5, 2011), aff'd, 471 F. App'x 260 (5th Cir. 2012) ("Mr. Sawyer cannot state a claim for relief under federal criminal law unless a private right of action is specifically provided under the law. He attempts to bring a civil action under the honest services fraud clause contained in a federal criminal statute and

under the law making identity theft a crime. 18 U.S.C. §§ 1346 & 1028. Neither of these laws provide citizens a private right of action, and Mr. Sawyer therefore cannot bring a claim based upon them."); *Pehrson v. Old Am. Cnty. Mut. Fire Ins. Co.*, No. 1:24-CV-01180-DAE, 2025 WL 1872634, at *5 (W.D. Tex. Mar. 27, 2025), report and recommendation adopted, No. 1:24-CV-01180-DAE, 2025 WL 1779565 (W.D. Tex. June 27, 2025) ("Pehrson invokes federal and state criminal statutes throughout his complaint, including 18 U.S.C. §§ 1343 and 1346 and Texas Penal Code § 32.49 . . . To the extent he bases any of his claims against Old American, Davies, or Littleton on those statutes, the undersigned recommends that the claims be dismissed. As a private citizen, Pehrson may not initiate a federal criminal prosecution because the power to do so is vested in the executive branch."). Nor is there a constitutional right to have someone criminally prosecuted. *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).

Accordingly, Cimiotta is barred from bringing a claim under Section 1346 against the Individual Quintana Defendants because it does not provide a private cause of action to her. *Desir v. Walmart, Inc.*, No. 4:23-CV-00700, 2024 WL 1200350, at *5 (S.D. Tex. Feb. 8, 2024) (Bryan, M.J.) report and recommendation adopted by 2024 WL 1201625 (S.D. Tex. Mar. 20, 2024) (Eskridge, J.) ("However, violations of federal or state criminal statutes do not give rise to a private cause of action.").

**c.**     **Cimiotta's claim that the Quintana Defendants engaged in the obstruction of governmental proceedings fails because such act is not one of the exhaustive and enumerated activities under RICO.**

"RICO provides an exhaustive definition of "racketeering activity," which includes numerous federal crimes." *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 735 F. Supp. 2d 679, 696 (S.D. Tex. 2010) (citing 18 U.S.C. § 1961(1)), also citing *Johnson v. Hoffa*, 196 F. App'x. 88, 90 n. 3 (3d Cir.2006) ("18 U.S.C. § 1961 (1) catalogues an exhaustive list of 'racketeering activities' RICO encompasses."). Obstruction of governmental proceedings—as alleged by Cimiotta—is not an identified racketeering activity under 18 U.S.C. § 1961(1). Accordingly, this claim fails as a matter of law.

**d.**     **Cimiotta does not have standing to bring a whistleblower retaliation claim under RICO.**

Cimiotta's claim that the City's termination of her employment violated RICO is also without merit. "Whistle blowers do not have standing to sue under RICO for the injury caused by the loss of their job." *Arroyo v. Oprona, Inc.*, 736 F. App'x 427, 429 (5th Cir. 2018) (citing *Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1215 (5th Cir. 1988)); accord *Jones v. Enter. Rent A Car Co. of Texas*, 187 F. Supp. 2d 670, 676 (S.D. Tex. 2002) ("[T]he Fifth Circuit and the United States Supreme Court, have held that employees who are discharged for reporting or refusing to participate in a pattern of racketeering activity do not have standing to sue their employers under 18 U.S.C. § 1964(c)."). Accordingly, Cimiotta's termination does not support any theory of relief for Cimiotta's claim under RICO. *Cullom*, 859 f.2d at 1215; *Arroyo*, 736 F. App'x at 429; *Jones*, 187 F. Supp. 2d at 676.

### 3. Cimiotta fails to state a RICO claim against the Individual Quintana Defendants under Section 1962(d).

"Subsection 1962(d) prohibits a conspiracy to violate §§ 1962(a), (b), or (c)." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015). "To prevail on a RICO conspiracy claim, [Cimiotta] had to demonstrate (1) that two or more people agreed to commit a substantive RICO offense and (2) that [the defendants] knew of and agreed to the overall objective of the RICO offense." *Id*. Where, as here, Cimiotta has "failed to properly plead a claim under §§ 1962(a), (b), or (c), [she] correspondingly failed to properly plead a claim under § 1962(d)." *Id*.; *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 930 (5th Cir. 2002) ("failure to plead the requisite elements of either a § 1962(a) or a § 1962(c) violation implicitly means that [Nolen] cannot plead a conspiracy to violate either section."); *In re Sunpoint Sec., Inc.*, 350 B.R. 741, 751 (Bankr. E.D. Tex. 2006) ("to succeed on a statutory civil conspiracy theory under § 1962(d), a plaintiff must be able to plead and prove a violation of a provision of subsection (a), (b), or (c) of § 1962."). Because Cimiotta has not alleged a viable racketeering activity under RICO, she cannot allege a conspiracy to commit a racketeering activity prohibited by RICO.

### H. If the Court Dismisses All of Cimiotta's Federal Claims, the Court Must Dismiss Cimiotta's Ultra Vires State Claim.

If the Court dismisses Cimiotta's federal claims in their entirety, her only remaining claim is her ultra vires claim—a state claim—which the Court does not have jurisdiction over. Accordingly, if the Court dismisses all of Cimiotta's federal claims, it should dismiss Cimiotta's ultra vires claim without prejudice.

### V. CONCLUSION & PRAYER

Defendants CITY OF QUINTANA, TEXAS, MAYOR VENANZIO "MIKE" CASSATA, COUNCILMEMBER JUDITH CAMILLE TYNER, COUNCILMEMBER SUE ANN TULEY, COUNCILMEMBER STEVE ALONGIS, COUNCILMEMBER REBECCA BUTTON, and FORMER-MAYOR SHARI LYNN WRIGHT respectfully request the Court partially dismiss Cimiotta's Amended Complaint and such other relief to which the Quintana Defendants are justly entitled in law or equity.

Respectfully submitted,

*Carmen Jo Rejda-Ponce*

**Carmen Jo Rejda-Ponce – Attorney-in-Charge**
State Bar No. 24079149
Federal I.D. No. 1366666
crejdaponce@germer.com
**Antonio Cruz Ramirez, III**
State Bar No. 24113672
Federal I.D. No. 3515678
aramirez@germer.com
**Germer PLLC**
2929 Allen Parkway, Suite 2900
Houston, TX 77019
(713) 650-1313 – Telephone
(713) 739-7420 – Facsimile

COUNSEL FOR DEFENDANTS, CITY OF QUINTANA, TEXAS, VENANZIO "MIKE" CASSATA, JUDITH CAMILLE TYNER, SUE ANN TULEY, STEVE ALONGIS, REBECCA BUTTON AND SHARI LYNN WRIGHT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2025, a true and correct copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all known counsel of record pursuant to the Federal Rules of Civil Procedure.

_____

**Carmen Jo Rejda-Ponce**